TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

NATALIE BAUGHMAN, District of Columbia Bar No. 997075
Trial Attorney
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 353-5027
Email: Natalie.Baughman@usdoj.gov

*Attorneys for Plaintiff, United States of America*

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ENVIRONMENTAL OPERATIONS, INC., MISSOURI COBALT, LLC, and MISSOURI MINING INVESTMENTS, LLC<br><br>Defendants. | No. 4:24-cv-144<br><br>**COMPLAINT** |

Plaintiff United States of America, by authority of the Attorney General of the United States, acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF ACTION

1. This is a civil action for injunctive relief and penalties brought against Environmental Operations, Inc., Missouri Cobalt, LLC, and Missouri Mining Investments, LLC ("Defendants"), for violations of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a) and 1342.

The United States seeks: 1) injunctive relief to stop Defendants' ongoing violations of the CWA, including unauthorized discharges and discharges of pollutants to waters of the United States in violation of the relevant National Pollutant Discharge Elimination System ("NPDES") permit, and 2) civil penalties for Defendants' past and ongoing violations of the CWA at the Madison Mine in Fredericktown, Missouri (the "Site").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and over the Defendants pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and 33 U.S.C. § 1319(b).

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395 and 33 U.S.C. § 1319(b) because events giving rise to this action arose within this judicial district, and because Defendants own and/or operate a facility within this district.

4. Notice of the commencement of this action has been provided to the State of Missouri pursuant to 33 U.S.C. § 1319(b).

5. Authority to bring this civil action is vested with the Attorney General of the United States pursuant to 28 U.S.C. §§ 516 and 519 and 33 U.S.C. § 1366.

## DEFENDANTS

6. Defendant Environmental Operations, Inc. is a Missouri corporation that at all relevant times operated the Site in Fredericktown, Missouri.

7. Defendant Missouri Cobalt, LLC is a Delaware limited liability company that at all relevant times operated the Site in Fredericktown, Missouri.

8. Defendant Missouri Mining Investments, LLC is a Missouri limited liability company that at all relevant times owned the Site in Fredericktown, Missouri.

9. Each Defendant is a "person" as defined by 33 U.S.C. § 1362(5).

## CWA STATUTORY BACKGROUND

10. The CWA prohibits the discharge of any pollutant by any person except as in compliance with the CWA.  33 U.S.C. § 1311(a).

11. The CWA defines "discharge of a pollutant" as any addition of any pollutant to navigable waters from any point source.  33 U.S.C. § 1362(12).

12. The CWA defines "person" to include corporations, partnerships, associations, municipalities, commissions, and political subdivisions of a State.  33 U.S.C. § 1362(5).

13. The CWA defines "point source" as any discernible, confined and discrete conveyance, including any pipe, ditch or channel, from which pollutants are or may be discharged.  33 U.S.C. § 1362(14).

14. The CWA defines "pollutant" to include "solid waste . . . chemical wastes, biological materials . . . heat . . . and industrial, municipal, and agricultural waste discharged into water."  33 U.S.C. § 1362(6).

15. The CWA defines "navigable waters" as the waters of the United States.  33 U.S.C. § 1362(7).

16. Authorized states may issue NPDES permits authorizing discharges of pollutants otherwise prohibited under the CWA.  33 U.S.C. § 1342(b).

17. At all relevant times, the State of Missouri has been and continues to be authorized by the Administrator of the EPA to implement the NPDES permit program for discharges to navigable waters within its jurisdiction.  33 U.S.C. § 1342(b).  *See* 39 *Fed. Reg.* 40,067 (Nov. 13, 1974).

18. Pursuant to 33 U.S.C. §§ 1319(a)(3) and 1342(i), EPA retains authority, concurrent with authorized state NPDES programs, to enforce state-issued permits.

19. Pursuant to 33 U.S.C. § 1319(b) and (d), EPA is authorized to bring a civil action seeking appropriate injunctive relief and civil penalties for violations of an NPDES Permit issued by a State and unauthorized discharges prohibited by 33 U.S.C. § 1311(a).

## GENERAL ALLEGATIONS

**A.     Site History**

20. Defendants own and/or operate the Madison Mine located in Madison County, Missouri, just south of the Fredericktown city limits.

21. The Madison Mine is a 1,750-acre subsurface mine where metals mining occurred intermittently between the 1840s and 1961, producing copper, lead, cobalt, nickel, iron, zinc, and silver.

22. The mine flooded with groundwater after its closure in 1961, and, since then, floodwater has seeped out of the ground and contaminated receiving waters.  Mine floodwater contains pollutants such as arsenic, cadmium, cobalt, copper, lead, magnesium, nickel, sulfates, thallium, and zinc.

23. Disposal of mine wastes occurred at the Site when it was operating, with wastes known as chat disposed of in piles and tailings deposited into impoundments called tailings basins.  These mine wastes contain pollutants including antimony, arsenic, cadmium, chromium, cobalt, copper, iron, lead, nickel, and zinc.

24. In 2018, Defendant Missouri Mining Investments, LLC purchased the Site to reclaim metals from mine waste and to bring the mine back into operation.  Defendant Missouri Mining Investments, LLC contracts with Defendant Missouri Cobalt, LLC and Environmental Operations, Inc. to operate the Site.

25. In 2019, Defendants began reprocessing mine wastes at the Site to reclaim metals from excavated surface tailings using froth flotation refining processes. Process wastewater generated from this process is conveyed to and stored in earthen process wastewater containment structures known as tailings basins.

26. The Site was listed on EPA's Superfund National Priorities List in 2003, and is now part of the Madison County Mines Superfund Site as Operable Unit 2. In 2018, Missouri Mining Investments, LLC entered a federal administrative settlement with EPA to conduct a removal action at the Site pursuant to the Comprehensive Environmental, Response, Compensation and Liabilities Act, 42 U.S.C. § 9601 et seq.

**B.    The NPDES Permit**

27. On February 1, 2019, the Missouri Department of Natural Resources ("MoDNR") issued NPDES Permit MO-0098752 (the "Permit") to Missouri Mining Investments, LLC for effluent discharges and discharges of stormwater associated with industrial and construction activities. The Permit expired on September 30, 2021, but, consistent with Missouri regulations (*see*, 10 CSR 20-6.010(10)(C)), the terms and conditions are continued automatically pending issuance of a renewed permit, and the Permit remains in effect at the Site.

28. The Site has two permitted outfalls under the MoDNR Permit, Outfalls 001 and 002.

29. Permitted discharges from Outfall 001 include discharge from an area known as the D Tailings Dam and blanket drain, intermittent stormwater runoff from the D Tailings Area, large unvegetated areas throughout the Site, areas next to a waterbody known as Tollar Branch, and land disturbance activities. Treatment for Outfall 001 includes best management practices.

5

Outfall 001 discharges into Tollar Branch, a relatively permanent tributary of Saline Creek, which connects to the Little St. Francis River, a traditional navigable water.

30. Permitted discharges from Outfall 002 include groundwater seepage from the mine, intermittent discharges from a pond that holds stormwater from several tailings areas, a sediment basin that contains stormwater runoff from the production area and areas next to the tributary to Saline Creek, and intermittent stormwater runoff from land disturbance activities. Treatment for Outfall 002 includes best management practices. Outfall 002 discharges into a relatively permanent tributary of Saline Creek, which connects to the Little St. Francis River, a traditional navigable water.

31. The Site has a third and unpermitted discharge point, which is a discrete channel approximately 150-feet long located perpendicular to Highway Z with a direct surface connection to Goose Creek, where Defendants have discharged stormwater runoff from disturbed areas around the eastern portion of the Site.

32. During all times relevant to this Complaint, Defendants discharged wastewaters containing "pollutants," within the meaning of 33 U.S.C. § 1362(6), through the outfalls and unpermitted discharge point into: Tollar Branch; Goose Creek; the receiving stream for Outfall 002; and/or Saline Creek.

33. Tollar Branch has continuous flow for five months of the year and is connected to Saline Creek, which connects to the Little St. Francis River, a traditional navigable water.

34. Goose Creek is a perennial stream with continuous flow and is connected to Saline Creek, which connects to the Little St. Francis River, a traditional navigable water.

35. The receiving stream for Outfall 002 is a tributary with at least seasonal flow connected to Saline Creek, which connects to the Little St. Francis River, a traditional navigable

water. The receiving stream has three months of flow from rainwater and continuous flow from mine seepage. The stream has bed and banks.

36. Saline Creek is a perennial stream with continuous flow and is connected to the Little St. Francis River, a traditional navigable water.

37. Tollar Branch, Goose Creek, the receiving stream for Outfall 002, and Saline Creek are each a relatively permanent tributary connected to the Little St. Francis River, a traditional navigable water.

38. The waterbodies into which Defendants discharged wastewater are each a "navigable water" and a "water of the United States" under 33 U.S.C. § 1362(7).

39. The wastewaters from the Site contain "pollutants" as defined by 33 U.S.C. § 1362(6), including, but not limited to, cadmium, chloride + sulfate, cobalt, copper, lead, nickel, pH, total suspended solids ("TSS"), and zinc.

40. The two permitted outfalls and unpermitted discharge point that discharge from the Site into waters of the United States are "point sources" within the meaning of the CWA. 33 U.S.C. § 1362(14).

## FIRST CLAIM FOR RELIEF
(*Discharges of Pollutants in Violation of Effluent Limitations of NPDES Permit*)

41. The United States realleges paragraphs 1 through 40 above as if fully set forth herein.

42. The Permit contains effluent limitations. Effluent limitations, as defined in 33 U.S.C. § 1362(11), are restrictions on the quantity, rate, and concentration of chemical, physical, biological, and other constituents of wastewater discharges into waters of the United States.

7

43. The Permit contains effluent limitations for total recoverable cadmium, chloride + sulfate, total recoverable cobalt, total recoverable cooper, total recoverable lead, total recoverable nickel, pH; TSS, total recoverable zinc, and acute whole effluent toxicity ("WET").

44. From February 1, 2019, through the present, Defendants have discharged pollutants into waters of the United States in violation of the Permit. Between February 1, 2019, and November 30, 2023, alone, Defendants violated the effluent limitations described in Paragraph 43 on at least 8,606 days, based on exceedances of daily maximum and monthly average limits of multiple pollutants at the same time.

45. For each exceedance of an effluent limitation, Defendants are in violation of 33 U.S.C. § 1311, for discharging in violation of the conditions and limitations of the Permit.

46. Unless enjoined, Defendants will continue to discharge pollutants in excess of the Permit's effluent limits.

47. Pursuant to 33 U.S.C. § 1319(b) and (d), Defendants are liable for injunctive relief and civil penalties. Maximum civil penalties for violations of the CWA are established by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4, including violations of any condition or limitation in an NPDES permit. The maximum civil penalty per day per violation of the CWA is, $66,712 per day per CWA violation occurring after November 2, 2015, where penalties are assessed after December 27, 2023.

**SECOND CLAIM FOR RELIEF**
*(Unauthorized Discharges)*

48. The United States realleges paragraphs 1 through 47 above as if fully set forth herein.

49. Section D(12)(a) of the Permit states that any spill, overflow, or other discharge not specifically authorized by the Permit is unauthorized.

50. Section F(2)(a) of the Permit states that the Permit does not authorize process water or wastewater discharges not specifically allowed in the Permit.

51. On October 26, 2021, Defendants discharged 250,000 gallons of process water associated with mining processes and 330 cubic yards of soil from a geotextile bag adjacent to the Site's tailings pond through Outfall 001.

52. Defendants do not currently have, and never had, an NPDES permit that authorizes this type of discharge.  The discharge is not permitted or otherwise authorized by the CWA, or other federal, state, or local law or regulation.

53. On January 6, 2022, Defendants discharged 72,000 gallons of process water associated with mining processes and approximately 10 to 14 cubic yards of mine tailings solids through Outfall 002.

54. Defendants do not currently have, and never had, an NPDES permit that authorizes this type of discharge.  The discharge is not permitted or otherwise authorized by the CWA, or other federal, state, or local law or regulation.

55. On December 15, 2022, MoDNR conducted a compliance assistance visit at the Site and documented a muddy red stormwater discharge at the unpermitted discharge point to Goose Creek.  It is unknown how long the discharge was occurring prior to MoDNR's visit. However, based on rainfall data, EPA estimates that Defendants discharged stormwater to Goose Creek on at least 53 occasions between the visit and January 2024.

56. Defendants do not currently have, and never had, an NPDES permit that authorizes these discharges.  The discharges are not permitted or otherwise authorized by the CWA, or other federal, state, or local law or regulation.

9

57. For each unauthorized discharge, Defendants are in violation of 33 U.S.C. § 1311, for discharging in violation of the conditions and limitations of the Permit.

58. Unless enjoined, Defendants will continue to discharge pollutants.

59. Pursuant to 33 U.S.C. § 1319(b) and (d), Defendants are liable for injunctive relief and civil penalties.  Maximum civil penalties for violations of the CWA are established by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4, including discharges unauthorized by an NPDES permit.  The maximum civil penalty per day per violation of the CWA is, $66,712 per day per CWA violation occurring after November 2, 2015, where penalties are assessed after December 27, 2023.

### THIRD CLAIM FOR RELIEF
*(Failure to Update and/or Inadequate SWPPP)*

60. The United States realleges paragraphs 1 through 59 above as if fully set forth herein.

61. The Permit contains requirements for the Site's Stormwater Pollution Prevention Plan ("SWPPP").  Section D(5) of the Permit requires the Site to implement a SWPPP which must be reviewed and updated every year or as Site conditions change.  Section F(3) requires the Site to have a Land Disturbance SWPPP that lists Site-specific practices to minimize industrial exposed stormwater, soil exposure, soil erosion, and the discharge of pollutants from industrial stormwater and land disturbance activities.  The Land Disturbance SWPPP must be reviewed and updated every five (5) years or as Site conditions change.

62. As of EPA's October 2022 inspection, Defendants had one SWPPP for the Site that contained industrial and land disturbance (or construction) stormwater pollution prevention requirements.

63.     As of EPA's October 2022 inspection, Defendants' SWPPP was not updated to reflect current Site conditions and did not contain information required by Section F(3) of the Permit, including a map accurately identifying all current areas of soil disturbance, location of best management practices ("BMPs") and soil stabilization activities, and direction of stormwater flow and a list of current BMPs utilized.

64.     On information and belief, since October 2022, Defendants' SWPPP has not been updated to meet Permit conditions.

65.     Defendants' failures to update the SWPPP and/or include all required information in the SWPPP from October 2022 to the present are violations of the conditions and limitations of the Permit.

66.     Unless enjoined, Defendants will continue to violate the conditions and limitations of the Permit.

67.     Pursuant to 33 U.S.C. § 1319(b) and (d), Defendants are liable for injunctive relief and civil penalties.  Maximum civil penalties for violations of the CWA are established by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4, including violations of the conditions and limitations of the Permit.  The maximum civil penalty per day per violation of the CWA is, $66,712 per day per CWA violation occurring after November 2, 2015, where penalties are assessed after December 27, 2023.

### FOURTH CLAIM FOR RELIEF
*(Failure to Implement and/or Inadequate BMPs)*

68.     The United States realleges paragraphs 1 through 67 above as if fully set forth herein.

69.     The Permit contains requirements for minimum BMPs at the Site.  Section D(6) requires Defendants to provide sediment and erosion control sufficient to prevent or control

11

sediment loss off of the property.  Section D(6) requires compliance with Section F(1), which requires minimum BMPs incorporated into a SWPPP to prevent discharges from causing or contributing to an exceedance of water quality standards including general criteria.

70. EPA's October 2022 inspection identified several instances where Defendants failed to adhere to and implement BMPs as required by Sections D(6) and F(1) of the Permit. Specifically, (1) stormwater runoff from the B, C, and E Tailings Areas did not enter a detention basin prior to discharging to Outfall 002; (2) there were no sediment trackout controls at the Highway Z entrance to the Site; (3) rock check dams were not constructed with 2-inch to 3-inch rock as required by the SWPPP; (4) stormwater conveyance ditches and/or trenches in the production area and employee parking lot were not vegetated or rocked; (5) stilt fence implementation was inadequate; and (6) the Site had significant areas bare of vegetation.

71. EPA's October 2022 inspection also demonstrated that current BMPs are inadequate to control and prevent stormwater pollution from leaving the Site, as shown by several total suspended solids discharges from both outfalls from May 2020 to the present.

72. Defendants' failures to comply with Sections D(6) and F(1) of the Permit are violations of the conditions and limitations of the Permit.

73. On information and belief, Defendants have not corrected the deficiencies EPA identified in its October 2022 inspection.

74. Unless enjoined, Defendants will continue to violate the conditions and limitations of the Permit.

75. Pursuant to 33 U.S.C. § 1319(b) and (d), Defendants are liable for injunctive relief and civil penalties.  Maximum civil penalties for violations of the CWA are established by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4, including violations of the conditions and limitations

of the Permit.  The maximum civil penalty per day per violation of the CWA is, $66,712 per day per CWA violation occurring after November 2, 2015, where penalties are assessed after December 27, 2023.

## FIFTH CLAIM FOR RELIEF
*(Failure to Maintain BMPs)*

76. The United States realleges paragraphs 1 through 75 above as if fully set forth herein.

77. Section D(5) of the Permit requires Defendants to select, install, use, operate, and maintain BMPs in the SWPPP and to correct operational deficiencies within seven (7) to fourteen (14) days, depending on the type of deficiency.  Section F(1) requires minimum BMPs incorporated into a SWPPP to prevent discharges from causing or contributing to an exceedance of water quality standards.  Section F(3) requires Defendants to design, implement, and maintain effective stormwater, erosion, and sediment controls to minimize pollutant discharges as part of the Land Disturbance SWPPP.

78. EPA's October 2022 inspection showed that Defendants were not maintaining Site BMPs to prevent and/or minimize stormwater pollution leaving the Site.  Additionally, Site stormwater inspection records from 2019 to 2022 showed that Defendants failed to maintain BMPs by failing to correct deficient BMPs after identifying problems during inspections.

79. Defendants' failures to maintain Site BMPs are violations of the conditions and limitations of the Permit.

80. On information and belief, Defendants have not corrected the deficiencies EPA identified in its October 2022 inspection.

81. Unless enjoined, Defendants will continue to violate the conditions and limitations of the Permit.

13

82. Pursuant to 33 U.S.C. § 1319(b) and (d), Defendants are liable for injunctive relief and civil penalties. Maximum civil penalties for violations of the CWA are established by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4, including violations of the conditions and limitations of the Permit. The maximum civil penalty per day per violation of the CWA is, $66,712 per day per CWA violation occurring after November 2, 2015, where penalties are assessed after December 27, 2023.

## SIXTH CLAIM FOR RELIEF
*(Failure to Conduct Inspections and/or Failure to Maintain Records)*

83. The United States realleges paragraphs 1 through 82 above as if fully set forth herein.

84. The Permit contains requirements to conduct inspections and maintain records. For example, Section D(13)(a) requires Defendants to inspect basins, Section D(5) says the SWPPP must include a schedule for inspections, and Section F(3)(b)(xii)(1) requires inspections once every seven (7) calendar days and when certain storm events occur. The Site's SWPPPs for 2018, 2021, and 2022 required stormwater inspections to take place weekly.

85. Defendants did not conduct weekly inspections and/or did not maintain inspection records between February 1, 2019, to August 23, 2019; August 27, 2019, to July 28, 2020; and December 14, 2020, to April 29, 2021. Additionally, one or more inspections were missed in August, September, October, November, and December 2020, November and December 2021, and July and August 2022. A total of 121 weekly inspections were missed from February 2019 to August 2022.

86. Even when Defendants conducted weekly inspections, the inspections failed to meet Permit requirements to ensure that BMPs were maintained.

14

87. Defendants' failures to conduct inspections and/or maintain records from 2019 to 2022 are violations of the conditions and limitations of the Permit.

88. On information and belief, Defendants have not corrected their failures to conduct inspections and maintain records since August 2022.

89. Unless enjoined, Defendants will continue to violate the conditions and limitations of the Permit.

90. Pursuant to 33 U.S.C. § 1319(b) and (d), Defendants are liable for injunctive relief and civil penalties.  Maximum civil penalties for violations of the CWA are established by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4, including violations of the conditions and limitations of the Permit.  The maximum civil penalty per day per violation of the CWA is, $66,712 per day per CWA violation occurring after November 2, 2015, where penalties are assessed after December 27, 2023.

## SEVENTH CLAIM FOR RELIEF
*(Failure to Conduct Accelerated WET Testing)*

91. United States realleges paragraphs 1 through 90 above as if fully set forth herein.

92. The Permit contains WET testing requirements.  WET refers to the aggregate toxic effects to aquatic organisms from all pollutants contained in a facility's wastewater.  According to Special Condition 1(h) of the Permit, if the regularly scheduled WET test exceeds the acute toxic unit limit for any one test, the permittee shall conduct follow-up WET testing within 60 calendar days of becoming aware of a failure and shall submit an inventory of all accelerated WET test results.

93. On April 10, 2019, a WET test result for a certain aquatic organism (*Ceriodaphnia dubia*) at Outfall 002 exceeded the permitted acute toxic unit limit for that organism.  Sampling was conducted on March 26, 2019.

94. On January 21, 2021, another WET test result for *Ceriodaphnia dubia* at Outfall 002 exceeded the permitted acute toxic unit limit for that organism. Sampling was conducted on December 21, 2020.

95. Because of the exceedances in 2019 and 2020, Defendants were required to conduct accelerated WET testing or receive a waiver from MoDNR each time. Defendants neither conducted the testing nor received a waiver.

96. Defendants' failures to comply with the accelerated WET testing requirements are violations of the conditions and limitations of the Permit.

97. Pursuant to 33 U.S.C. § 1319(b) and (d), Defendants are liable for civil penalties. Maximum civil penalties for violations of the CWA are established by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4, including violations of the conditions and limitations of the Permit. The maximum civil penalty per day per violation of the CWA is, $66,712 per day per CWA violation occurring after November 2, 2015, where penalties are assessed after December 27, 2023.

### EIGHTH CLAIM FOR RELIEF
*(Failure to Meet Test Procedures for Analysis of Hydrogen Ion (pH))*

98. The United States realleges paragraphs 1 through 97 above as if fully set forth herein.

99. The Permit contains analytical and sampling requirements for the testing of hydrogen ion (pH). Section C states that the Permit is subject to Missouri Part I standard conditions, which require compliance with 40 C.F.R. § 136.3 Table II, No. 28, which in turn states that pH samples shall have a maximum holding time of fifteen (15) minutes from the time of sample collection before the sample is analyzed.

100. From 2019 to 2022, Defendants analyzed the samples for pH more than 15 minutes after sample collection, according to laboratory data sheets, thereby violating Section C of the Permit.

101. Defendants' failures to comply with the pH sampling and analysis requirements are violations of the conditions and limitations of the Permit.

102. Pursuant to 33 U.S.C. § 1319(b) and (d), Defendants are liable for civil penalties. Maximum civil penalties for violations of the CWA are established by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4, including violations of the conditions and limitations of the Permit. The maximum civil penalty per day per violation of the CWA is, $66,712 per day per CWA violation occurring after November 2, 2015, where penalties are assessed after December 27, 2023.

### NINTH CLAIM FOR RELIEF
*(Failure to Maintain Minimum Freeboard)*

103. The United States realleges paragraphs 1 through 102 above as if fully set forth herein.

104. Table A-2 of the Permit contains monitoring requirements for Permitted Feature 005, a no-discharge holding basin known as Tailings Basin 1. The requirements took effect on November 1, 2019, and limit the distance from the tailings to the top of the basin, known as freeboard, to a minimum of two feet so the basin does not spill over.

105. From December 1, 2019, to April 20, 2022, Defendants failed to maintain a minimum freeboard level of two feet in Tailings Basin 1 on twenty-five (25) occasions, thereby violating Table A-2 of the Permit.

106. Defendants' failures to comply with the freeboard requirement are violations of the conditions and limitations of the Permit.

17

107. Pursuant to 33 U.S.C. § 1319(b) and (d), Defendants are liable for civil penalties. Maximum civil penalties for violations of the CWA are established by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4, including violations of the conditions and limitations of the Permit. The maximum civil penalty per day per violation of the CWA is, $66,712 per day per CWA violation occurring after November 2, 2015, where penalties are assessed after December 27, 2023

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff the United States respectfully requests that this Court grant the following relief:

1. Enter judgment finding that Defendants are liable for the foregoing violations;

2. Assess civil penalties against Defendants in amounts not to exceed those provided pursuant to 33 U.S.C. § 1319(d);

3. Order Defendants to take appropriate steps as may be necessary to remedy violations pursuant to 33 U.S.C. § 1319(b);

4. Grant such other and further relief as the Court deems just and proper.

DATED: January 26, 2024            Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

/s/ Natalie Baughman
NATALIE BAUGHMAN
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044
(202) 353-5027
Natalie.Baughman@usdoj.gov