**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**ENVIRONMENTAL OPERATIONS INC., et al.**<br><br>***Defendants*.** | **No. 4:24-cv-00144** |

**DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S MOTION TO LIFT STAY AND BRIEF IN SUPPORT OF ITS CROSS MOTION FOR DISMISSAL WITH PREJUDICE**

Jeffrey B. Jensen (MS Bar No. 46745)
TORRIDON LAW PLLC
801 Seventeenth Street, NW, Suite 1100
Washington, DC 20006
(202) 249-6900
jjensen@torridonlaw.com

Kevin Poloncarz (*pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7070
kpoloncarz@cov.com

*Counsel for Environmental Operations, Inc., Missouri Cobalt, LLC, and Missouri Mining Investments, LLC*

September 14, 2026

**TABLE OF CONTENTS**

**PAGE**


INTRODUCTION ........ 1

BACKGROUND ........ 2

A. The Government Files Suit And The Case is Referred for Alternative Dispute Resolution. ........ 2

B. Defendants Try To Convince The Government For Fifteen Months To Adopt The Position They Believe The Government Agreed To At Mediation. ........ 4

C. The Government Acknowledges That It Will Not Agree To A Consent Decree Reflecting the Term Sheet And Asks The Court To Let This Case Proceed. ........ 6

D. The State of Missouri Repeatedly Asks The Department of Justice To Return Prosecution Of The Case To The State And Dismiss The Action, But Its Requests Are Denied. ........ 7

LEGAL STANDARD ........ 8

ARGUMENT ........ 9

This Case Should Be Dismissed For Failure To Prosecute. ........ 9

A. The Government Chose To Delay This Case Despite Repeated Warnings From The Court That Doing So Could Result In Dismissal. ........ 9

B. The Government's Decision Not To Prosecute Was Intentional. ........ 12

C. Dismissal With Prejudice Is A Proportionate Response To The Government's Failure To Prosecute. ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arkansas Wildlife Fed'n v. ICI Americas, Inc.*,
29 F.3d 376 (8th Cir. 1994) ....................12

*Arnold v. ADT Sec. Servs., Inc.*,
627 F.3d 716 (8th Cir. 2010) ....................8, 9, 13, 14

*Balkum v. Cnty. of Monroe*,
No. 08-cv-06259, 2011 WL 4841058 (W.D.N.Y. Oct. 12, 2011) ....................15

*Boyle v. Am. Auto Serv., Inc.*,
571 F.3d 734 (8th Cir. 2009) ....................15

*Burgs v. Sissel*,
745 F.2d 526 (8th Cir. 1984) ....................9, 12

*Clemens v. Loc. One, Serv. Emps. Int'l Union*,
No. 4:17-cv-2381, 2019 WL 652850 (E.D. Mo. Feb. 15, 2019) ....................10

*First Gen. Res. Co. v. Elton Leather Corp.*,
958 F.2d 204 (8th Cir. 1992) ....................9, 13

*Freeman v. Wyeth*,
764 F.3d 806 (8th Cir. 2014) ....................9

*Garrison v. Int'l Paper Co.*,
714 F.2d 757 (8th Cir. 1983) ....................9, 14

*GCIU Emp'r Ret. Fund v. Chi. Tribune Co.*,
8 F.3d 1195 (7th Cir. 1993) ....................12

*Hunt v. City of Minneapolis*,
203 F.3d 524 (8th Cir. 2000) ....................9

*Intertel, Inc. v. G4S Compliance & Investigations, Inc.*,
No. 4:09-cv-853, 2010 WL 561482 (E.D. Mo. Feb. 10, 2010) ....................10

*Jackson v. Schoemehl*,
788 F.2d 1296 (8th Cir. 1986) ....................9

*Link v. Wabash R.R. Co.*,
370 U.S. 626 (1962)....................8

*Pagtalunan v. Galaza*,
291 F.3d 639 (9th Cir. 2002) ....................................................................................15

*Pearson v. Dennison*,
353 F.2d 24 (9th Cir. 1965) ....................................................................................14

*Rodgers v. Curators of Univ. of Mo.*,
135 F.3d 1216 (8th Cir. 1998) ....................................................................................14

*Tuchschmidt v. Outdoor Writers Ass'n of Am., Inc.*,
230 F.3d 1364 (8th Cir. 2000) ....................................................................................9

**Statutes**

33 U.S.C. § 1344(h)(1)(G) ....................................................................................7

**Other Authorities**

Fed. R. Civ. P. 41(b) ....................................................................................1, 8, 9, 15

L.R. 8.01 ....................................................................................8, 14

## INTRODUCTION

This case has been pending for more than fifteen months as the Parties have attempted to re-agree to terms that were previously agreed to at mediation. Indeed, neither side disputes that an agreement was reached at mediation to settle the case. However, a disagreement about whether ***certain terms*** were agreed to at mediation has led to a prolonged negotiation in which the Defendants have continued to insist that certain terms be included in any consent decree and the Government has continued to reject those terms. As a result, the case has not been meaningfully advanced since the Court's initial warning on May 5, 2025, that the failure by the Government to file a consent decree or dismiss this case would result in a dismissal with prejudice.

The Government's motion to lift the stay and proceed with litigation should be denied because the Court should do what it has repeatedly threatened to do: dismiss this case with prejudice. Courts regularly dismiss cases under Rule 41(b) where, as here, a plaintiff has engaged in persistent delays or failure to prosecute their case, particularly where the court had warned a plaintiff that such a dismissal would occur. The Court here has repeatedly put the Government on notice that its failure to file a consent decree or voluntarily dismiss the case by an imposed deadline would result in a dismissal with prejudice. Despite these repeated warnings, those deadlines have repeatedly been missed, and no such filing has been made. Although the Parties have been negotiating in good faith during this time, the Government has known Defendants' position about what terms needed to be in any consent decree—including Defendants' insistence that Environmental Operations, Inc. ("EOI") be removed as a party—and the Government could have chosen to move forward fifteen months ago if those terms were unworkable. It deliberately chose not to move the case forward during that time.

In arguing that its decision to delay should be excused, the Government says that dismissal would "reward" Defendants because they "decline[d] for whatever reason to finalize an agreement

in principle reached at ADR." Mot. 5. But that is simply not what happened. Indeed, Defendants have repeatedly sought to convince the Government to agree to terms that were reflected by the mediator's own draft Term Sheet prepared ***the day of the mediation.*** While the Government may dispute that the mediator's Term Sheet reflected the terms they believe were agreed to at mediation, it is simply not the case that Defendants have refused to "consummat[e]" an "agreement[] reached in principle after ADR" when the mediator's own contemporaneous notes align with Defendants' position. *Id.* Indeed, Defendants' position for the past fifteen months was simply to try to convince the Government to agree to a consent decree that tracks the Term Sheet.

Nor is dismissal with prejudice an overly harsh result. Defendants have already taken the corrective actions contemplated by the Government in their latest draft consent decree. And dismissal is consistent with the wishes of the State of Missouri, which has repeatedly asked the Department of Justice to end its prosecution.

For all of these reasons, this matter should be dismissed with prejudice.[1]

## BACKGROUND

### A. The Government Files Suit And The Case is Referred for Alternative Dispute Resolution.

The Government filed this lawsuit on January 6, 2024, alleging that Defendants Environmental Operations, Inc.; Missouri Cobalt, LLC; and Missouri Mining Investments, LLC violated certain provisions of the Clean Water Act beginning in 2019. *See* Compl. ¶ 25, ECF No. 1. In June 2024, the Court referred the case to alternative dispute resolution, ECF No. 26, and the Parties conducted two full days of mediation on the matter. ECF No. 37. Following the second full day

[1] Following a discussion with the clerk's office, Defendants are filing this Opposition to Plaintiffs' Motion and its Cross-Motion to Dismiss as two separate entries on the docket. The Opposition to Plaintiffs' Motion to Lift the Stay and the Brief in Support of Defendants' Motion to Dismiss are identical.

of mediation on April 9, 2025, the Parties and the mediator believed they had reached a settlement in principle. That day, the mediator circulated a draft Term Sheet reflecting his contemporaneous understanding of the terms he believed the Parties had agreed on in order to settle the case, inviting the Parties to correct him if he was wrong. Decl. of K. Poloncarz Exhibit A, April 9 E-Mail from R. Olian to K. Poloncarz, J. Day, N. Baughman; Poloncarz Decl. Exhibit B, April 9 Draft Term Sheet.[2] Among other things, that Term Sheet stated that the Parties would "engage in good faith discussions about how to effectuate" the "[r]emoval of EOI from ongoing obligations in litigation," and proposed options that could include an "amended complaint not naming EOI" or "dismissal of EOI." Exhibit B at 1. The Term Sheet then omits EOI from the section regarding liability when it discusses "financial resources available ***to MMI and Missouri Cobalt***, respectively, both for the purposes of implementing compliance components and for the purposes of stipulated penalties." *Id.* (emphasis added). Defendants believed (and still believe) that this Term Sheet accurately reflects the agreement in principle reached by the Parties at mediation. Poloncarz Decl. ¶ 5. Importantly for Defendants, the Term Sheet contemplated the removal of EOI from the suit and any consent decree. *Id*.

The Government disputes that the Term Sheet accurately reflected the agreement the Parties reached. *Id.* ¶ 6. Nevertheless, the Government also expressed its willingness to consider adopting terms consistent with the Term Sheet following additional discussion and exchange of information, and the Parties believed they would ultimately be able to resolve the dispute. *Id.*. In light of these discussions, on May 5, 2025, the mediator advised the Court that the matter had

[2] In light of the Government's suggestion that Defendants had "decline[d] for whatever reason to finalize an agreement in principle reached at ADR," Mot. 5, Defendants asked the Government to agree to waive any confidentiality protections relating to the Term Sheet and the mediation. The Parties agreed to do so solely for purposes of the pending motion.

achieved a settlement. ECF No. 37. The Court ordered the Parties to file by June 19, 2025, a "stipulation of dismissal, a motion for leave to voluntarily dismiss, or a proposed consent judgment." ECF No. 38. The Court expressly warned the Government for the first time that the "[f]ailure to timely comply" would "result in the dismissal of this action with prejudice." *Id.*

### B. Defendants Try To Convince The Government For Fifteen Months To Adopt The Position They Believe The Government Agreed To At Mediation.

On June 16, 2025, three days before the deadline to file before the Court would dismiss the matter with prejudice, the Government provided Defendants with a draft consent decree. ECF No. 40 ¶ 5. However, the draft still did not reflect the agreement Defendants believed had been reached at mediation—specifically the removal of EOI from the suit—and Defendants were not willing to finalize the draft as written. Poloncarz Decl. ¶ 7. Nevertheless, Defendants agreed that they would continue to discuss the matter with the overnment and agreed to jointly ask the Court to extend the deadline to file the consent decree. As a result, on June 19, 2025—the deadline for the Parties to file a consent decree before the Court warned that it would dismiss the matter with prejudice—the Parties filed a joint motion requesting that the Court extend the deadline by ninety days. ECF No. 40 at 3. On June 20—a day after the deadline had expired—the Court granted the motion, extending the deadline to September 17, 2025. ECF No. 41.

Following the extension, the Parties continued to discuss the disputed terms in good faith. Though not mentioned in the Government's Motion to Lift the Stay, Defendants provided comments on the draft consent decree to the Government on August 13, 2025, comments that sought to return the consent decree to the terms that were reflected on the mediator's Term Sheet. ECF No. 43 ¶ 3. However, the Parties still could not reach agreement on whether EOI would continue to be a party to the suit and the consent decree. Poloncarz Decl. ¶ 8. Defendants agreed again to jointly ask the Court to extend the deadline to file the consent decree. Accordingly, on September

16—the day before the new deadline to file a consent decree before the Court would dismiss the matter with prejudice—the Parties asked the Court to extend the deadline for another 120 days. ECF No. 43 at 2. After the Court did not initially grant the request, the Government subsequently filed a separate motion to stay in light of a lapse of appropriations, which Defendants did not oppose. ECF No. 44. The Court granted the motion to stay proceedings for thirty days given the lapse of appropriations, ECF No. 46, and it denied as moot the prior joint motion to stay proceedings, ECF No. 45. Based on the new deadline, the Government had until December 4, 2025, to file a consent decree or else risk having the Court dismiss the case with prejudice.

On October 1, 2025, to convince the Government to adopt the terms set forth on the mediator's draft Term Sheet—specifically the removal of EOI—Defendants provided the United States with certain additional information it had requested. ECF No. 47 ¶ 4. In addition, Defendants agreed to submit yet another joint request to extend the deadline for the United States to consider the new information provided. Accordingly, on December 19, 2025—two weeks after the deadline to file a consent decree had passed—the Parties filed another joint request with the Court and asked the Court to extend the deadline to April 1, 2026. ECF No. 47 at 3. The Government explained that it had "just recently reviewed this information" the Defendants provided on October 1, 2025, that "[b]ased on that review, the United States is in the process of responding to the Defendants[']comments on the draft Consent Decree," and that "[t]he United States anticipates providing the Defendants comments on the draft Consent Decree in the near future." *Id.* ¶ 4. Although the Parties had requested the Court to extend the deadline to April 1, the Court gave the Parties until May 11, 2026, to finalize the consent decree before it would dismiss the case with prejudice. ECF No. 50. The Court clearly warned, however, that "NO ADDITIONAL STAYS WILL BE GRANTED, CONSISTENT WITH THE STATEMENTS OF THE PARTIES." *Id.*

After May 11 came and passed without a consent decree being filed, on June 10, 2026, the Court issued an order to show cause "why this case should not be dismissed with prejudice for failure to follow the Court's Orders and/or for failure to prosecute." ECF No. 51 at 2. The United States filed its response to the show cause order on June 18, 2026, and explained that it had not filed anything because it believed that the case was simply returning to the deadlines set forth in the Case Management Order (ECF No. 25). *See* ECF No. 52. This statement was made despite the Court's May 5, 2025 order stating that the failure to file a consent decree or dismiss the case "shall result in the dismissal of this action with prejudice," ECF No. 38. The Government, not the Defendants, also claimed the Parties were "close" to a resolution even though the important issue of EOI's inclusion in the settlement still had not been resolved. ECF No. 52 at 2. Defendants, on their part, explained that "[b]ecause it is Plaintiff's obligation to prosecute this action in a timely manner, Defendants did not understand the Court's April 13, 2026 order to direct the Defendants to file an update on the status of negotiations on their own independently of Plaintiff." ECF No. 53 ¶ 7. Defendants also informed the Court that, "[d]espite the absence of a definitive agreement, Defendants, in cooperation with the State pursuant to State issued permits, have proceeded with implementation of the same work sought by Plaintiff in the draft consent decree." *Id.* ¶ 10.

### C. The Government Acknowledges That It Will Not Agree To A Consent Decree Reflecting the Term Sheet And Asks The Court To Let This Case Proceed.

Following fifteen months of negotiation in which Defendants sought a return to the settlement they believed had been reached at mediation and was reflected on the mediator's draft Term Sheet, the Parties reached an impasse. Although progress had been made on terms about how the specifics of the environmental compliance program would be implemented under the consent decree (terms that were consistent with the terms on the mediator's draft Term Sheet), the Parties reached an impasse and the Government ultimately would not agree to a consent decree unless

EOI was a party to it. Poloncarz Decl. ¶ 8. Accordingly, on August 31, 2026, it filed a Motion to Lift the Stay, Reset Discovery Deadlines, and Proceed with Litigation. ECF No. 55.

### D. The State of Missouri Repeatedly Asks The Department of Justice To Return Prosecution Of The Case To The State And Dismiss The Action, But Its Requests Are Denied.

While the Parties continued to negotiate about EOI's inclusion in the litigation and any proposed consent decree, the State of Missouri has repeatedly informed the Department of Justice that it would like the matter returned to the State to handle, in accordance with 33 U.S.C. § 1344(h)(1)(G). As the State recognizes, the allegations in the complaint involve a permit issued by the State and enforced by the State since 2019. *See* June 18, 2026 Letter to the Honorable Henry Autrey from Jake Buxton, Deputy Director, Missouri Department of Natural Resources ("Buxton Letter") (attached as Exhibit 1). The State issued an administrative complaint in 2022, prior to the initiation of this lawsuit by the federal Government. *Id.* As the State explains, in February of 2025, the State "asked the Department of Justice ("DOJ") to return the matter to the State of Missouri," but "[t]he response of DOJ was to preemptively file this lawsuit that was never intended for litigation." *Id.* The State explains that "attempts to return the matter to the State have been rejected." *Id.* The State's requests were made because "[t]he vast majority of the work contemplated by [this] action [have] been completed through permit requirements" and that "[a] dismissal without prejudice with a referral to the State of Missouri is in the public interest." *Id.*

The Missouri Attorney General's Office separately reached out to the Department and asked that the case be dismissed. On May 29, 2026, the Chief of Staff to the Missouri Attorney General e-mailed the Chief of Staff to the Assistant Attorney General for the Energy and Natural Resources Division at the U.S. Department of Justice, noting that it was "requesting Region 7 US EPA dismiss the above matter and return it to the state of Missouri," as "[the Missouri Department of Natural Resources] and the Missouri Attorney General have repeatedly asked for the matter to

be returned to the State and I understand Region 7 concurs that this is the appropriate action." Poloncarz Decl. Exhibit C at 3. The e-mail also explained that the State disagreed with the federal Government's position in the case, noting that "[t]he CWA program at EPA created a narrative in 2023 that MMI/MOCO ignored groundwater, and imposed a significant penalty" even though "the federal and state regulators involved in the initial cleanup agreed that groundwater would not be in the initial phase of work." *Id.* Accordingly, the Missouri Attorney General's Chief of Staff asked that "the federal government dismiss the matter to allow the state of Missouri to enforce its permit consistent with the facts." *Id.* The Missouri Attorney General Chief of Staff followed up on July 16, 2026, explaining that "[t]he Missouri [Attorney General's Office] and [Department of Natural Resources] remain interested in the matter being returned to the State and/or dismissed." *Id.* at 2. The request was, once again, denied. *Id.* at 1.

## LEGAL STANDARD[3]

Federal Civil Procedure Rule 41(b) provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b); *see also* L.R. 8.01. This "ancient" and "inherent" authority of district courts "is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962); *see, e.g.*, *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 722 (8th Cir. 2010) (affirming dismissal of case after plaintiff's repeated discovery deficiencies over a period of years). Dismissal is warranted where there is evidence that the plaintiff acted "intentionally[,] as opposed to accidentally or involuntarily." *Arnold*, 627 F.3d at 722 (citing *Hunt v. City of Minneapolis*, 203

[3] Because Defendants' requested relief—dismissal with prejudice—is directly at odds with the relief sought by the Government in its Motion to Lift the Stay, Defendants' motion and brief focus on the requirements a party must show to obtain dismissal under Fed. R. Civ. P. 41(b).

F.3d 524, 527 (8th Cir. 2000)). Put differently, dismissal under Rule 41(b) is proper when the plaintiff has exhibited "a pattern of intentional delay." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (citing *Garrison v. Int'l Paper Co.*, 714 F.2d 757, 760 (8th Cir. 1983)). "The court does not need to find that the plaintiff acted in bad faith." *See First Gen. Res. Co. v. Elton Leather Corp.*, 958 F.2d 204, 206 (8th Cir. 1992); *accord Arnold*, 627 F.3d at 722. While "dismissal with prejudice should be reserved for instances 'of willful disobedience to a court order or continued or persistent failure to prosecute a case,'" ultimately "[e]ach case must be viewed on its own." *Jackson v. Schoemehl*, 788 F.2d 1296, 1299 (8th Cir. 1986) (quotations omitted).

## ARGUMENT

### This Case Should Be Dismissed For Failure To Prosecute.

#### A. The Government Chose To Delay This Case Despite Repeated Warnings From The Court That Doing So Could Result In Dismissal.

Courts regularly dismiss cases under Rule 41(b) if a plaintiff has engaged in persistent delays or failure to prosecute their case, particularly where the court had warned a plaintiff that such a dismissal would occur. *See, e.g.*, *Tuchschmidt v. Outdoor Writers Ass'n of Am., Inc.*, 230 F.3d 1364 (8th Cir. 2000) (affirming dismissal and noting that "[t]he district court … had repeatedly granted [plaintiff] extensions and shown him leniency, and had twice warned him that violating court-ordered deadlines could result in sanctions, including dismissal"); *Freeman v. Wyeth*, 764 F.3d 806, 809 (8th Cir. 2014) ("Judge Wilson strongly hinted then that he would consider dismissal if the plaintiffs' attorneys did not provide the updated medical authorizations in a timely fashion. That is what happened here."); *First Gen. Res. Co.*, 958 F.2d at 206 (8th Cir. 1992) (finding a "pattern of intentional delay" where the "court twice ordered the Appellants to respond to the discovery requests, provided them an extension . . ., and expressly warned the Appellants in the second order that failure to do so would result in dismissal of their action.").

That standard is met here. The Government was repeatedly advised that failure to submit a consent decree or otherwise voluntarily dismiss this case would result in the Court dismissing the case with prejudice. Indeed, the Court placed the government on notice more than ***sixteen months ago***—May 5, 2025—that the "[f]ailure to timely comply with this order ***shall*** result in the dismissal of this action with prejudice." ECF No. 38 (emphasis added). Over the course of the next fifteen months, Defendants attempted to convince the government to return to the agreement they believed was reached at mediation and was reflected in the initial Term Sheet prepared by the mediator—including one key term that remains in dispute between the Parties. In response, the Government not only failed to move the case forward but either waited until the Court's imposed deadline was about to be triggered before asking the Court to extend it (requests that Defendants agreed to in good faith) or simply missed the deadline altogether.[4]

While each of the requests to extend the stay put in place were made jointly, that is neither surprising nor controlling. It is well-settled that it is the government's obligation to prosecute its case against a defendant, not the defendant's burden to allow the government to continue to prosecute against it. *See Clemens v. Loc. One, Serv. Emps. Int'l Union*, No. 4:17-cv-2381, 2019 WL 652850, at *2 (E.D. Mo. Feb. 15, 2019) ("This is Plaintiff's case and it is his responsibility to prosecute it and comply with the rules."); *Intertel, Inc. v. G4S Compliance & Investigations, Inc.*, No. 4:09-cv-853, 2010 WL 561482, at *1 (E.D. Mo. Feb. 10, 2010) ("It is plaintiff's obligation to move the case forward."). That Defendants agreed to continue negotiations and tried to convince the Government to return to the position Defendants and the mediator believed were agreed to at mediation does not excuse any failure to prosecute by the Government.

[4] *Compare* ECF No. 46 (extending deadline by thirty days to December 4, 2025) *with* ECF No. 47 (filing a request to extend the stay on December 19—more than two weeks after the deadline).

The Government's two arguments in its defense are contradicted by both the law and the facts. First, the Government suggests that Defendants are responsible "for the breakdown of settlement negotiations" because they "decline[d] for whatever reason to finalize an agreement in principle reached at ADR." Mot. 5. That assertion is simply not true. To the contrary, Defendants have been trying to adopt a consent decree encompassing the terms that they believe were agreed upon at mediation and on which ***the mediator himself believed the Parties had agreed***, as reflected by the draft Term Sheet he prepared following the mediation. Even if the Government believes a different agreement was reached at mediation, there is no basis for its assertion that Defendants have refused to "consummate[] [an] agreement[] reached in principle after ADR." Mot. 5. Indeed, Defendants have repeatedly made clear to the Government that they were willing to agree to the terms that the mediator placed on the original Term Sheet.[5]

Second, the Government suggests that it has been diligently prosecuting these claims because it has been attempting to settle the case. *See* Mot. 4 ("Thus, the effort to settle the claims in this case was diligent prosecution of those claims."). This, too, is wrong. While Defendants have been working in good faith with the Government in the hopes that the Government would ultimately agree to the terms from the mediator's Term Sheet (including the removal of EOI), it was the Government's decision to continue those discussions in light of Defendants' steadfast position. To the extent that EOI's inclusion was a "dealbreaker" for the Government, the Government could have moved forward more than a year ago. It chose not to prosecute.

---

[5] The Government's assertion that Defendant were responsible "for the breakdown of settlement negotiations," Mot. 5, is also false. On August 4, 2026, Defendants offered to engage in a "page turn" of the most recent draft of the consent decree, so that Defendants could explain their proposed edits. *See* Poloncarz Decl. ¶ 9. The Government declined Defendants' offer. *Id.*

The Government relies on *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 8 F.3d 1195, 1200 (7th Cir. 1993), but that case proves Defendants' point. While the Seventh Circuit found that the settlement discussions in that case did not support a dismissal for failure to prosecute, key to its decision was its finding that the discussions were not "pursued after it became apparent they would not be fruitful." *Id.* Here, by contrast, the Government was aware of Defendants' steadfast position on the appropriate terms—including specifically EOI's removal from the case—and nevertheless chose not to prosecute while attempting to press for a settlement beyond what both the Defendants and the mediator believed the Parties had agreed.

The Government's reliance on *Arkansas Wildlife Federation v. ICI Americas, Inc.*, 29 F.3d 376, 380-81 (8th Cir. 1994), is similarly misplaced. There, the Government was found to be "diligently prosecuting" a matter because the government agency had "required [the defendant] to correct the violations, imposed a compliance and reporting schedule, regularly assessed monetary penalties, and reserved the right to assess additional penalties." *Id.* at 380. Here, by contrast, the Government did not take any action against Defendants but simply agreed to continue settlement discussions despite knowing Defendants' position. While Defendants freely acknowledge that the Government was acting in good faith throughout the negotiation process, it was nevertheless the Government's choice to suspend its prosecution of this case.

In short, the Government's repeated failure to file a consent decree or otherwise dismiss the case shows "a pattern of intentional delay by the plaintiff," which "is sufficient to warrant [dismissal with prejudice] by the trial court." *Burgs*, 745 F.2d at 528.

**B. The Government's Decision Not To Prosecute Was Intentional.**

As the Eighth Circuit has recognized, a plaintiff's failure to prosecute must be intentional, but the plaintiff "need not have acted in bad faith." *Arnold*, 627 F.3d at 722. This intent is demonstrated where, as here, a plaintiff "demonstrated a persistent pattern of delay and failure to

comply with the district court's orders," and where the "district court provided plaintiffs with numerous opportunities to comply." *Id.*

The Government's decision not to file a consent decree consistent with the Term Sheet or voluntarily dismiss this matter—despite being put on notice that its failure to do so could result in dismissal with prejudice—was intentional. The Government was warned of the consequences of failing to comply with the Court's order but nevertheless chose (repeatedly) not to do so. As the Eighth Circuit has recognized, a plaintiff's actions may be found to be "deliberate" when he fails to comply with a district court's orders despite being awarded several extensions and being warned repeatedly that a failure to act would result in dismissal with prejudice. *See First Gen. Res. Co.*, 958 F.2d at 206 (finding "no difficulty" in finding a plaintiff's actions "constituted a pattern of intentional delay meriting dismissal with prejudice" after "[t]he district court twice ordered the Appellants to respond to the discovery requests, provided them an extension on each occasion, and expressly warned the Appellants in the second order that failure to do so would result in dismissal of their action."). Here, the Court has warned the Government no fewer than four times: (i) in its May 5, 2025 Order noting that a failure to file a consent decree or dismiss the case "shall result in the dismissal of this action with prejudice," ECF No. 38; (ii) in its April 13, 2026 order granting an extension to May 11, 2026 and explaining that "NO ADDITIONAL STAYS WILL BE GRANTED, ECF No. 50; (iii) in its June 10 show cause order demanding that the Government justify its failure to comply with the Court's earlier orders requiring a consent decree or dismissal be filed or else have the case be dismissed with prejudice, ECF No. 51; and (iv) in its June 22 order again stating that the failure to file a consent decree or dismiss the case "shall result in the dismissal of this action with prejudice for failure to comply with the Court's Orders and/or failure to prosecute," ECF No. 54. The Government's failure to file the requested documents is intentional.

### C. **Dismissal With Prejudice Is A Proportionate Response To The Government's Failure To Prosecute.**

Finally, dismissal with prejudice is an appropriate remedy in this case. The Eighth Circuit has found dismissal to be appropriate where, as here, a district court has provided a plaintiff "with numerous opportunities to comply" with an order. *Arnold*, 627 F.3d at 722. Moreover, while a warning from the district court that a litigant "is skating on the thin ice of dismissal" is not strictly necessary to support dismissal with prejudice, such warnings were repeatedly given here, including in a prior show cause order by the Court. *Rodgers v. Curators of Univ. of Mo.*, 135 F.3d 1216, 1221 (8th Cir. 1998). Thus, "because a district court may dismiss a case for any violation of a court order, and there is evidence of several intentional acts of delay," dismissal is an appropriate remedy here. *Id.* at 1221-22 (citation omitted).

Of course, Defendants are prejudiced by the Government's year-plus delay in prosecuting this case. *See Garrison*, 714 F.2d 760 (citing *Pearson v. Dennison*, 353 F.2d 24, 28 (9th Cir. 1965) for the proposition that "[d]elay is almost always prejudicial"). Indeed, this Court's local rules recognize that a court may dismiss a case "with or without prejudice" for failure to prosecute where it "has been pending for six (6) months without any action." L.R. 8.01. The fifteen-month delay in this case is over two times the amount of time needed for the Court to dismiss under this rule.

Nor is this delay inconsequential to Defendants' ability to defend themselves. Many of the factual allegations in the Complaint relate to events that occurred in 2019—seven years ago. *See, e.g.*, Compl. ¶ 44 (noting that the alleged discharges began on "February 1, 2019"); *id.* ¶ 85 (alleging Defendants did not conduct inspections and/or maintain inspection records throughout various periods in 2019 through 2021); *id.* ¶ 93 (citing an April 10, 2019 test result that allegedly exceeded permissible limits). In the ensuing seven years, evidence may have been lost and witness memories have faded—the classic examples of Rule 41(b) prejudice. *Boyle v. Am. Auto Serv.*,

*Inc.*, 571 F.3d 734, 739 (8th Cir. 2009) (explaining Rule 41(b) prejudice "takes two forms: loss of evidence and loss of memory by a witness") (quotation omitted); *see, e.g.*, *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale."); *Balkum v. Cnty. of Monroe*, No. 08-cv-06259, 2011 WL 4841058, at *2 (W.D.N.Y. Oct. 12, 2011) ("While Defendants do not claim any prejudice for delay, the amount of time that has passed [*i.e.*, 18 months] will certainly have an effect on witness memory and discovery" justifying dismissal for failure to prosecute).

Finally, dismissal with prejudice is not an overly harsh remedy. As Defendants have previously explained to the Court, they have worked in cooperation with the State of Missouri pursuant to state-issued permits to implement the same corrective measures sought by the Government in the contemplated consent decree. *See* ECF No. 53 ¶ 10. Indeed, the State has repeatedly urged the Government either to return the matter to the State or to dismiss this action, reflecting their belief that continued federal prosecution is not in the public interest. As the Missouri Department of Natural Resources explained to the Court, the State had been working on the matter with Defendants, saw "the facts at issue here very differently than the plaintiff," and had "asked" DOJ "to return the matter to the State of Missouri." *See* Ex. 1. On July 16, 2026, the Missouri Attorney General's chief of staff informed the Department of Justice that the State "remain[s] interested in the matter being returned to the State and/or dismissed." *See* Poloncarz Decl. Exhibit C at 2.

**CONCLUSION**

The Court should dismiss the Complaint with prejudice and deny the Government's motion as moot.

September 14, 2026

Respectfully submitted.

/s/ *Kevin Poloncarz*
Kevin Poloncarz (*pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-7070
kpoloncarz@cov.com

Jeffrey B. Jensen (MS Bar No. 46745)
TORRIDON LAW PLLC
801 Seventeenth Street, NW, Suite 1100
Washington, DC 20006
(202) 249-6900
jjensen@torridonlaw.com

*Counsel for Environmental Operations, Inc., Missouri Cobalt, LLC, and Missouri Mining Investments, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2026, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system and thereby served upon all counsel of record.

September 14, 2026

/s/ *Kevin Poloncarz*
Kevin Poloncarz